UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEVIN MOSLEY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:15 CV 794  RWS/JMB |
| ) | |
| IAN WALLACE, ) | |
| ) | |
| Respondent. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the petition of Devin Mosley for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.  Respondent Ian Wallace has filed a response in opposition.  The case was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b).

**I.     Procedural Background**

Petitioner Devin Mosley is presently incarcerated at the Southeast Correctional Center pursuant to the sentence and judgment of the Circuit Court of the City of Saint Louis.  On September 30, 2011, a jury convicted petitioner of two counts of second-degree murder, under § 565.021, Mo. Rev. Stat., one count each of first-degree and attempted first-degree robbery, under § 569.020, Mo. Rev. Stat., and one count of armed criminal action for each of the four underlying crimes, under § 571.015, Mo. Rev. Stat.  Verdicts  [Doc. # 6-4 at 48-55].  The trial court sentenced petitioner to consecutive terms of imprisonment totaling life, plus life, plus thirty-five years, based on the jury's recommendations following the penalty phase.  Penalty Phase Verdicts and Judgment [Doc. # 6-4 at 80-87 and 104-10].  The Missouri Court of Appeals

affirmed petitioner's convictions on direct appeal on February 13, 2013.  State v. Mosley, No. ED97797 (Feb. 13, 2013) [Doc. # 6-5].  Petitioner's motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15 was denied following an evidentiary hearing.   Conc. of Law & Order [Doc. # 6-6 at 15-25, 56-66].  On February 3, 2015, the Missouri Court of Appeals affirmed the denial of post-conviction relief.  Mosley v. State, No. ED100915 (Feb. 3, 2015) [Doc. # 6-9].  Petitioner timely filed this petition for relief pursuant to 28 U.S.C. § 2254 on May 18, 2015.

**II.     Factual Background**

Late on June 1, 2008, two men entered Maggie O'Brien's pub in the City of St. Louis. Only five people were in the pub that evening: the manager, Mike Dolan; the bartender, Brett Ramsey; a patron, Ian Evans; and musicians Rocky Santhoff and Caelin Graber.  The two men, later identified as petitioner and his cousin Derrick Anthony,[1] were dropped off in front of the pub. They came in to the bar, used the restroom, purchased a beer, and left.  They returned about thirty minutes later with guns.  Evans was seated at the bar.  Anthony walked up behind him and put a gun to his head and yelled, "Let's go."  At the same time, petitioner walked to the stage where Santhoff and Graber were playing.  Petitioner pointed his weapon at Santhoff and tried to pull him off the stage.  When Santhoff did not immediately comply, petitioner reached past him and smacked Graber in the head with his gun.  Petitioner and Anthony herded everyone to the bar area and told them to get down on the floor.  Dolan had been in the manager's office.  He entered the bar with his hands in the air and went to the cash register and opened it.  He then ran into the kitchen, with Anthony in pursuit.  There were two gunshots from the kitchen.  Petitioner was still holding the others at gunpoint on the floor of the bar.  He yelled at them to interlace

---

[1] Mr. Anthony's name is spelled "Derrick" in the trial transcript and charging documents, while it is spelled "Derek" in the decisions of the Missouri Court of Appeals and the respondent's brief.

their fingers behind their heads and stay on the ground. He reached down and took Santhoff's wallet from his back pocket. Within moments, the alarm for the back door went off and the phone began to ring. Petitioner became very agitated. He alternately shouted to Anthony that they needed to leave and threatened to kill the people on the floor. The witnesses testified that petitioner fired one shot, the heat of which they could feel as they lay on the floor. After that, it became quiet.

The witnesses testified that the next voice they heard was Dolan's as he came into the bar. He told them that the robbers were gone and they could get up from the floor. He also said that he had been shot and asked Ramsey to call for help. He then lay down on the dining room floor. He was still alive when the paramedics arrived, but died later at the hospital. Anthony fled from Maggie O'Brien's and made his way to Children's Hospital, where he died from a gunshot wound to the chest. See Appellant's Brief [Doc. # 6-2 at 7].

Petitioner was arrested on a tip made to the police[2] and positively identified in a lineup by Ramsey, Evans, and Santhoff.[3] Resp. Brief [Doc. # 6-3 at 9]. Petitioner told the investigators that he was in the bar area holding people at gunpoint when he heard two shots from the kitchen. When he heard the kitchen door open, he fired his weapon and accidentally shot Anthony in the chest. Appellant's Brief [Doc. # 6-2 at 8]. A recording of his statement to the police was played for the jury. Transcript at 508 [Doc. # 6-1 at 134].

After deliberation, the jury found petitioner guilty of one count of attempted first-degree robbery of Dolan (Count I), one count of second-degree murder in the death of Dolan (Count

---

[2] Multiple sources gave police the names of four suspects: Stephen Hornbuckle, Jacson Baker, Derrick Anthony, and petitioner. Transcript at 503-04. Petitioner told investigators that the robbery had been planned by Hornbuckle, who previously worked at Maggie O'Brien's, and Jackson, who drove them to the pub. Resp. Ex. C at 8 [Doc. # 6-3].

[3] Graber only tentatively identified petitioner.

3

III), one count of first-degree robbery of Santhoff (Count V), and one count of second-degree murder in the death of Anthony (Count VII).[4] In addition, the jury found petitioner guilty of one count of armed criminal action for each of the above felonies (Counts II, IV, VI, and VIII). Verdicts and Instructions [Doc. # 6-4 at 48-52; 61-71]. During the penalty phase, the prosecutor called six victim impact witnesses: Michael Dolan's parents and the four people who had been present in the bar at the time of the robbery. The defense did not call any witnesses. Trans. at 684-703 [Doc. # 6-1 at 178-83]. The jury recommended sentences of life imprisonment for each felony murder conviction and related count of armed criminal action, twenty years for first-degree robbery and its related count of armed criminal action, and fifteen years for attempted robbery and its related count of armed criminal action. The trial court adopted the jury's recommendations and imposed the sentences for the murders and robberies consecutively, for a total of two life sentences plus thirty-five years.

### III. Legal Standard

When a claim has been adjudicated on the merits in state court proceedings, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), only if the state court's determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of

---

[4] The jury rejected a first-degree murder charge arising from Anthony's death.

4

facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id. See also Wilson v. Sellers, --- S. Ct. ---,  No. 16-6855, 2018 WL 1800370, at *3 (Apr. 17, 2018) (holding that, when the last state court to decide a claim does not explain its reasoning, the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale).

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 544 U.S. at 141; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410–11).

When reviewing whether a state court decision involves an "unreasonable determination of the facts," state court findings of "basic, primary, or historical facts" are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. Collier v. Norris, 485 F.3d 415, 423 (8th Cir. 2007) (citations omitted); 28 U.S.C. § 2254(e)(1).  Erroneous

5

findings of fact by the state courts do not ensure the grant of habeas relief. Rather, the determination of these facts must be unreasonable in light of the evidence of record. Sittner v. Bowersox, No. 4:12 CV 1156 CDP, 2017 WL 5518025, at *3 (E.D. Mo. Nov. 17, 2017) (citing Collier, 485 F.3d at 423).

### IV.  Discussion

Petitioner asserts twelve grounds for relief. In Ground One, he argues that there was insufficient evidence to support his conviction for second-degree murder in the death of Derrick Anthony. In Ground Two, he argues that trial counsel rendered ineffective assistance during the penalty phase by failing to call a mitigation witness on his behalf. These claims were fully presented to the state court. In the remaining ten claims, petitioner asserts that post-conviction counsel was ineffective in failing to raise multiple challenges to trial counsel's performance. Petitioner concedes that these claims were not raised in the state courts but argues that his procedural default is excused under Martinez v. Ryan, 566 U.S. 1 (2012). The Court need not address whether Martinez applies because these claims fail on their merits.

### Ground 1:  Sufficiency of Evidence for Second-Degree Murder

Petitioner argues that there was insufficient evidence that his accidental shooting of Anthony, as charged in Count VII, occurred during the commission of another crime.

Challenges to the sufficiency of the evidence arise under Jackson v. Virginia, 443 U.S. 307, 324 (1979), in which the Supreme Court held that a state prisoner is entitled to habeas relief if "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." The Jackson "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Id. at 324 n.16. A federal habeas corpus court faced with a factual record that supports conflicting

inferences "must presume that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326.

The Supreme Court has stated that Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference:

> First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

Coleman v. Johnson, 566 U.S. 650, 651 (2012) (per curiam) (internal citations omitted).

As instructed by Jackson, the Court examines the substantive elements of the offense. Under Missouri law, a person commits second-degree murder if he or she:

> [c]ommits or attempts to commit any felony, and, in the perpetration or the attempted perpetration of such felony or in the flight from the perpetration or attempted perpetration of such felony, another person is killed as a result of the perpetration or attempted perpetration of such felony or immediate flight from the perpetration of such felony or attempted perpetration of such felony.

Section 565.021.2. Thus, second-degree murder arises from the death of another person during either the commission (or attempted commission), or the flight from, an underlying felony.

On direct appeal, the Missouri Court of Appeals defined the underlying felony as the robbery by petitioner and Anthony "of the pub, its employees, and patrons." [Doc. # 6-5 at 4]. The evidence established that petitioner shot Anthony during the commission of this robbery. First, the shooting occurred in the same building as the robbery, which "indicates that the robbery and escape were ongoing." Id. When Anthony followed Dolan into the kitchen, petitioner was still holding the other victims at gunpoint on the floor of the pub, which constitutes a clear continuation of the robbery. Indeed, petitioner robbed Santhoff of his wallet

7

after Dolan and Anthony left the bar area. Finally, moments before shooting Anthony, petitioner shouted to him that they needed to escape. Id. at 4-5. Thus, there was sufficient evidence to establish that the robbery and/or the escape were ongoing at the moment that petitioner fired the shot that killed Anthony.

Petitioner's argument is based on the verdict director for Count VII, which defined the underlying felony for the killing of Anthony as the attempted robbery of Dolan. Inst. 5 (attempted robbery instruction), Inst. 12 (second-degree murder instruction) [Doc. # 6-4 at 64, 72]. Petitioner argues that the attempted robbery ended when Dolan fled into the kitchen and thus the subsequent shooting of Anthony was a separate, discrete act with no connection to the attempted robbery. Petitioner's reliance on the jury instruction is unavailing. A court conducting a sufficiency review "makes a limited inquiry tailored to ensure that a defendant receives the minimum that due process requires: a 'meaningful opportunity to defend' against the charge against him and a jury finding of guilt 'beyond a reasonable doubt.'" Musacchio v. United States, 136 S. Ct. 709, 715 (2016) (quoting Jackson, 443 U.S. at 314–315). "The reviewing court considers only the 'legal' question 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson, 443 U.S. at 319) (emphasis in original).

Petitioner has failed to show that the decision of the state court was "objectively unreasonable," as required to obtain habeas relief on a sufficiency of the evidence challenge. His claim for relief under Ground 1 should be denied.

### **Ground 2:  Ineffective Assistance of Trial Counsel**

Petitioner argues that trial counsel was ineffective for failing to call his girlfriend Tamika Hunter to testify during the penalty phase.[5]

Ms. Hunter testified at the post-conviction hearing that trial counsel never asked her to appear as a witness.  She stated that, if called, she would have testified that petitioner encouraged her to go to school to get her degree.  He also gave her financial and emotional support when she underwent treatment for thyroid cancer.  Resp. Brief [Doc. # 6-8 at 7-8] (quoting post-conviction relief transcript).  Trial counsel Annette Llewellyn testified that she spoke with Ms. Hunter before trial and endorsed her as a witness to testify that petitioner was a good father to his son. Id.  She could not specifically recall why she did not call Ms. Hunter to testify, but stated that the penalty phase had been extremely emotional and her strategy had been to "minimize the jury's emotional response" following the State's evidence in order to avoid doing "anything . . . that would make the jury dislike [petitioner] any more." Id. at 8 (quoting post-conviction transcript).  Her focus was on getting the jurors "to do what they thought was fair under all circumstances." Id.

The post-conviction motion court found that, based on its observation of the atmosphere in the courtroom during the penalty phase, Ms. Hunter's proposed testimony would not have changed the outcome.  Concl. of Law & Order [Doc. # 6-6 at 21].  The Missouri Court of Appeals affirmed the denial of post-conviction relief, holding that petitioner failed to establish either Strickland prong, because counsel's decision not to call Ms. Hunter to testify was reasonable trial strategy and there was not a reasonable probability that her testimony would have affected petitioner's sentence.  [Doc. # 6-9 at 7].

---

[5] In post-conviction proceedings petitioner challenged trial counsel's failure to call a number of mitigation witnesses.  Resp. Ex. H [Doc. # 6-6 at 39-51].  He does not purse claims related the other witnesses here.

9

To prevail on an ineffective assistance of counsel claim, a petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 688 (1984). With respect to the first Strickland prong, there is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. Id. at 689. Thus, "counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and the "burden to show that counsel's performance was deficient rests squarely on the defendant." Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quotation marks and citation omitted). A reviewing court must refrain "from engaging in hindsight or second-guessing of trial counsel's strategic decisions." Abernathy v. Hobbs, 748 F.3d 813, 816 (8th Cir. 2014) (citation omitted).

To establish the "prejudice" prong, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." Paulson v. Newton Corr. Facility, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted). Although Strickland requires a showing of both deficient performance and prejudice, a "finding that no prejudice exists is sufficient to conclude that counsel was not constitutionally ineffective — [courts] need not first make a determination regarding deficiency." Holder v. United States, 721 F.3d 979, 987 (8th Cir. 2013).

"Taken together, AEDPA and Strickland establish a 'doubly deferential standard' of review." Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Cullen v. Pinholster, 563 U.S. 170, 202 (2011)).

> First, under Strickland, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. Strickland, 466 U.S. at 696. . . . To satisfy Strickland, the likelihood of a different result must be "substantial, not just conceivable." Id. Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is incorrect. [Harrington v. Richter, 562 U.S. 86, 112, 101], 131 S. Ct. 770, 792, 785 (2011). This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at [102].

Williams, 695 F.3d at 831-32. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

Petitioner cannot establish that trial counsel was ineffective for failing to call Ms. Hunter to testify during the penalty phase. First, the court cannot say that counsel's proffered strategy was unsound or deficient. Second, even if counsel's performance was deficient, there is no basis for overruling the state court's decision that petitioner was not prejudiced by that failure. Petitioner is not entitled to relief under 28 U.S.C. § 2254 on his ineffective-assistance claim.

### Grounds 3 – 6:  Ineffective Assistance — Double Jeopardy

Petitioner argues that his four convictions for armed criminal action violate his rights under the Double Jeopardy Clause.[6] He asserts four similar claims that trial counsel was ineffective for failing to raise a double jeopardy challenge.[7] He acknowledges that his federal

---

[6] As discussed above, petitioner was convicted of one count of armed criminal action in association with each of two counts of second-degree murder, first-degree robbery and attempted first-degree robbery.

[7] Petitioner framed these claims as challenges to the performance of post-conviction counsel for failure to raise these claims in state court. On examination, however, the Court determines that these claims are directed to trial counsel's performance and that petitioner asserts ineffective assistance of post-conviction counsel in an effort to avoid procedural default.

11

habeas claims are procedurally defaulted because he failed to present them to the state courts. Nonetheless, he seeks review, arguing that he is entitled to relief from procedural default under Martinez v. Ryan, 566 U.S. 1 (2012). Because no double-jeopardy violation occurred, the Court can deny petitioner's claims on the merits without addressing procedural default. See 28 U.S.C. § 2254(b)(2); Padavich v. Thalacker, 162 F.3d 521, 522 (8th Cir. 1998) (holding that a federal habeas court may deny a claim on its merits rather than address issues of procedural default).

As relevant to petitioner's claims, the Fifth Amendment's Double Jeopardy Clause protects a criminal defendant against cumulative punishment. See Dodge v. Robinson, 625 F.3d 1014, 1017 (8th Cir. 2010) (discussing "three protections" under double jeopardy clause, including protection against cumulative punishment). This protection limits the judicial branch by "assuring that the [sentencing] court does not exceed its legislative authorization by imposing multiple punishments for the same offense." Id. (quoting Brown v. Ohio, 432 U.S. 161, 165 (1977)). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. 359, 366 (1983). Thus, no double jeopardy violation occurs "[w]here . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct." Id. at 368-69.

Petitioner's double jeopardy claims are foreclosed by relevant case law. The United States Supreme Court examined Missouri's armed criminal action statute[8] and held that "the Missouri legislature . . . expressed its clear intent that a defendant be subject to conviction and

---

[8] The Missouri armed criminal action statute proscribes the commission of any felony "by, with, or through the use, assistance or aid of a dangerous instrument or deadly weapon." The punishment imposed under the statute "shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon . . . ." § 571.015.1, Mo. Rev. Stat.

12

sentence under the armed criminal action statute in addition to any conviction and sentence for the underlying felony." Hunter, 459 U.S. at 363-64;[9] see also State v. Blackman, 968 S.W.2d 138, 140 (Mo. 1998) ("Because [Missouri's Armed Criminal Action] statute expressly states punishment for armed criminal action is 'in addition to' other punishment defendant may receive for the felony committed, it clearly establishes the legislature's intent to provide for successive punishment for those crimes."); State v. Hyman, 37 S.W.3d 384, 391 (Mo. Ct. App. 2001) ("[W]hatever the underlying felony may be, armed criminal action carries a separate, distinct, and additional punishment."). Because no double jeopardy violation occurred, petitioner cannot establish that his lawyer provided ineffective assistance. See Brooks v. Wallace, No. 4:16 CV 208 (JMB), 2018 WL 999971, at *7 (E.D. Mo. Feb. 21, 2018) (petitioner not entitled to habeas relief on claim that counsel was ineffective for failing to raise double jeopardy challenge to armed criminal action conviction); Williams v. Wallace, No. 4:15CV00534 AGF, 2017 WL 6731722, at *5 (E.D. Mo. Dec. 29, 2017) (no double jeopardy violation arises from Missouri convictions for both underlying offense and armed criminal action); Jones-El v. Wallace, No. 4:13-CV-85-SPM, 2016 WL 1258632, at *6 (E.D. Mo. Mar. 31, 2016) (same).

Petitioner also suggests that trial counsel should have argued that his punishment violates that Missouri's general cumulative punishment statute, § 556.041, Mo. Rev. Stat. This statute does not apply where, as here, the specific statutes governing punishment for the offenses at issue make it clear that the legislature intended cumulative punishment. Jones-El v. Wallace, No. 4:13-CV-85-SPM, 2016 WL 1258632, at *6 (E.D. Mo. Mar. 31, 2016) (citations omitted). Counsel was not ineffective for failing to raise a meritless claim. As to the general assertion that

---

[9] Petitioner asserts, without legal argument or citation, that the holding in Missouri v. Hunter, is unconstitutional. Petition [Doc. # 1 at 8]. Hunter remains binding Supreme Court precedent unless and until the United States Supreme Court agrees with him.

13

petitioner suffered cumulative punishment, the Court reiterates that each armed criminal action conviction relates to a distinct and separate underlying felony. Thus, thus the multiple convictions are not cumulative and do not implicate double jeopardy.

### Grounds 7 - 10:  Ineffective Assistance — Inconsistent Verdicts

Petitioner claims that his convictions for first-degree robbery in Count V and armed criminal action in Count VI were inherently inconsistent.[10] He makes the same argument with respect to his convictions for felony murder in Count VII and armed criminal action in Count VIII. Petitioner argues that trial counsel rendered ineffective assistance by failing to object to the trial court's failure to instruct the jury to re-examine the verdicts under MAI–CR 3d 312.06 and for allowing the inconsistent verdicts to stand.[11]

In Missouri, "[i]t is well settled in the law that the trial court has a duty to examine the verdict or verdicts returned by the jury for defects, ambiguities, and inconsistencies." State v. Bell, 62 S.W.3d 84, 93 (Mo. Ct. App. 2001) (citations omitted). In cases where armed criminal action is submitted in a separate count from the underlying felony and the jury attempts to return inconsistent verdicts with respect to those two counts, the trial court must give the jury the following instruction:

> The Court cannot accept your verdicts as written. The verdicts are inconsistent as to Count(s) _____ [Specify counts that are inconsistent]. You should examine your verdicts in light of all of the instructions. Do not destroy any of the verdict forms.

Id. (quoting MAI–CR 3d 312.06).

---

[10] Once again, petitioner framed these claims as challenges to the performance of post-conviction counsel but the Court determines that they are directed to trial counsel's performance.

[11] In Grounds 7 and 9, petitioner contends that trial counsel should have argued that the trial court erred by failing to give instruction 312.06 and, in Grounds 8 and 10, he contends that trial counsel should have argued that the trial court erred by allowing the inconsistent verdicts to stand.

14

In order to establish ineffective assistance of counsel, petitioner must first establish that the challenged verdicts were inconsistent. The verdict director for Count V required the jury to find that: (1) petitioner took Santhoff's wallet, (2) for the purpose of withholding it from Santhoff permanently, (3) while threatening the immediate use of physical force, and (4) that petitioner "displayed or threatened the use of what appeared to be a deadly weapon." Inst. 9 [Doc. # 6-4 at 69]. The verdict director for the associated armed criminal action in Count VI required the jury to find that petitioner: (1) committed the first-degree robbery and (2) that he did so "by or with or through the knowing use or assistance or aid of a deadly weapon." Inst. 10 [Doc. # 6-4 at 70]. Petitioner asserts that the gun element in Count V was "based on a theory of uncertainty," by which the Court assumes he means that conviction did not require proof that he actually had a gun, while the gun element in Count VI was "based on a theory of certainty;" i.e., conviction required the use, assistance or aid of an actual gun. The flaw in petitioner's argument is that nothing in the verdict director for Count V prohibited his conviction if the jury believed that he had a gun, as the verdict on Count VI shows it clearly did. The verdicts are not inconsistent and counsel did not render ineffective assistance by failing to press a meritless argument.

Petitioner similarly argues that the gun element in the felony-murder charge in Count VII is based on a theory of uncertainty. Petitioner is incorrect. The verdict director required the jury to find that petitioner was guilty of attempted first-degree robbery and that he killed Anthony by shooting him during the perpetration of the attempted first-degree robbery. Inst. 12 [Doc. # 6-4 at 72]. By convicting petitioner on Count VII, the jury obviously concluded that petitioner had a gun. Again, there is no inconsistency between the guilty verdicts for Counts VII and VIII and

counsel did not provide ineffective assistance by failing to argue that the verdicts were inconsistent. Grounds 7 through 10 should be denied.

### Grounds 11-12:  Jury Selection Claims

In Ground 11, petitioner contends that trial counsel was ineffective for failing to argue in the motion for new trial that the trial court improperly sustained strikes for cause of four venirepersons who failed to disclose a prior arrest. Petitioner argues that the prosecutor failed to strike a similarly situated venireperson — whom petitioner identifies as "Ms. Carmody" — who also failed to disclose a prior arrest. Petitioner's claim in Ground 11 is based on an erroneous reading of the record because Ms. Carmody was one of the two prosecutors in the case, not a member of the venire pool.[12] Ground 11 should be denied

In Ground 12, petitioner argues that trial counsel erred in failing to assert a challenge under Batson v. Kentucky, 476 U.S. 79 (1986) in the motion for new trial. Petitioner does not assert that any particular peremptory strike was based on race or gender. Rather, he asserts that, under Batson, the trial court was required to ask both sides to articulate a gender- and race-neutral reason for each of the peremptory strikes.

Petitioner's claim rests on a fundamental misunderstanding of the distinction between challenges for cause and peremptory strikes. A party seeking to strike a venire member for cause must show that the prospective juror is unable to lay aside any bias or opinions and render a verdict based on the evidence presented in court. See Moran v. Clarke, 443 F.3d 646, 650 (8th Cir. 2006). By contrast, a party may exercise peremptory strikes without articulating a reason,

---

[12] Furthermore, the trial court denied the prosecutor's motion to strike venirepersons Howard and Huff for cause. Trans. at 307-08 [Doc. # 6-1 at 84]. With respect to the other two cause strikes petitioner challenges, the trial court sustained the prosecutor's motion to strike Miss Davis after finding that she did not disclose her prior arrest because she thought the prosecutor did not know about it. Trans. at 309. The trial court sustained the motion to strike Mr. Harvey after finding that he chose to disclose only some of his prior arrests and he made an unsolicited comment that: "[W]hy would you want me on [the jury] if I have all this prior history." Trans. at 311.

16

unless the strike is motivated by race or gender-based discrimination. See Batson, 476 U.S. at 85-86 (defendant has right to jury selected by nondiscriminatory criteria); Georgia v. McCollum, 505 U.S. 42 (1992) (holding that the State has standing to challenge criminal defendant's discriminatory use of peremptory challenges); J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127 (1994) (barring use of peremptory strikes based on gender). Contrary to petitioner's assertion here, Batson applies only when a party argues that the opposing side had an improper race- or gender based motivation for making its strikes.

Petitioner also misunderstands what Batson's three-step process requires. First, the challenging party must make a *prima facie* showing that a peremptory challenge has been exercised on the basis of race or gender; second, if that showing has been made, the striking party must offer a neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the challenging party has shown purposeful discrimination. See Davis v. Ayala, 135 S. Ct. 2187, 2199 (2015). The opponent of the strike — here, the petitioner — bears the burden of persuasion regarding improper motivation.[13] Purkett v. Elem, 514 U.S. 765, 768 (1995) (per curiam).

In this case, the trial court gave each side six peremptory strikes for the jurors and one strike for the alternate jurors. The court asked for Batson challenges after each of the four rounds of strikes and was informed each time that there were no such challenges. Trans. at 317-19 [Doc. # 6-1 at 87]. Plaintiff has not cited any cases standing for the proposition that the striking party is required to articulate a race- or gender-neutral reason for the strike unless the opponent makes a prima facie showing of improper motive. Similarly, he has not cited any cases requiring the trial court to *sua sponte* contest the parties' affirmative statements that they see no

---

[13] The Court assumes for the purposes of this analysis that petitioner has standing to raise a constitutional challenge to the exercise of peremptory challenges by his own counsel.

17

basis for challenging the opposing side's peremptory strikes.  See Powell v. Bowersox, 895 F. Supp. 1298, 1323 (E.D. Mo. 1995) ("Courts generally do not review the prosecution's reasons for exercising preemptory challenges, unless the petitioner can establish a prima facie case of purposeful discrimination.") (citing Gray v. Mississippi, 481 U.S. 648, 667 (1986)).  Here, petitioner cannot show that the peremptory strikes were exercised in violation of Batson and trial counsel was not ineffective for failing to raise a Batson argument in a motion for new trial. Thus, Ground 12 should be denied.

For the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that the petition of Devin Mosley for writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Doc. # 1] be **denied**.

**IT IS FURTHER RECOMMENDED** that no certificate of appealability be granted, because petitioner has not made a substantial showing of the denial of a constitutional right.  See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 123 S. Ct. 1029, 1040 (2003) (standard for issuing a certificate of appealability).

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/ ***John M. Bodenhausen***
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 24th day of April, 2018.